UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| CHAD LANDRY and JEANNE BURNS | CIVIL ACTION NO. 09-615 |
|---|---|
| VERSUS | JUDGE TRIMBLE |
| LANEY DIRECTIONAL DRILLING CO., ET AL. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court are two motions: (1) a motion for summary judgment filed by defendant Laney Directional Drilling Company ("Defendant" or "Laney")[1] and (2) a motion for leave of court to file a petition of intervention by proposed intervenor plaintiff Iberville Real Properties, LLC ("Iberville").[2] For the reasons expressed below, the court finds that defendant's motion for summary judgment should be **GRANTED** and that Iberville's motion to intervene should be **DENIED**.

I.  BACKGROUND

Plaintiffs Chad Landry ("Landry") and Jeanne Burns ("Burns") (collectively "Plaintiffs) filed suit in the Eighteenth Judicial District Court for the Parish of Iberville, State of Louisiana on or about June 30, 2009.[3] Plaintiffs claim that on or about March 4, 2009, Laney committed the intentional tort of trespass on their property by entering the property and depositing approximately

---

[1] R. 33.

[2] R. 35.

[3] R. 1-1.

1

thirteen (13) loads of oil field "sludge" thereon.[4] Thereafter, Landry contacted the Louisiana Department of Environmental Quality ("DEQ") and requested that tests be performed to determine whether or not the substance dumped on his property was considered "hazardous."[5] Plaintiffs' complaint alleges that, although DEQ sent a representative to their property in response to Landry's call, the employee only "looked at the soil, smelled the soil, and instructed Mr. Landry that there was nothing hazardous in the foreign material" and that it was bentonite, which is a type of drilling mud used in the petroleum industry.[6] Plaintiffs were unsatisfied with the advice offered by DEQ and subsequently hired Eagle Environmental ("Eagle") to conduct further testing.[7] Eagle reported to plaintiffs that, contrary to the advice of DEQ, the substance on their property did contain hazardous materials.[8] Plaintiffs allege that Laney has failed to remove or remediate these hazardous materials and that the presence of these materials on their property has caused damages as follows:

> cost of testing for hazardous materials, projected cost for
> removal of hazardous materials, analytical cost for testing
> of historic trees on property, projected cost for care of historic
> trees on said property, past, present and future psychological
> pain and suffering, mental anguish, anxiety, psychological and
> psychic damages, past present and future loss of enjoyment of
> life, and inconvenience damages.[9]

---

[4] R. 1-3 at ¶¶ 3 - 6, 14.

[5] Id. at ¶ 7.

[6] Id. at ¶ 8; R. 33-5 at 116:8-13.

[7] Id. at ¶ 9.

[8] Id. at ¶ 10.

[9] Id. at ¶¶ 16, 17.

Laney removed the action to the Middle District court on August 4, 2009, alleging that DEQ was improperly joined in order to defeat federal diversity jurisdiction.[10] DEQ subsequently filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which was granted by U.S. District Judge John V. Parker, to whom this case was originally assigned.[11] Based on its finding that plaintiff failed to state a claim against DEQ in this case, the court also denied plaintiffs' then-pending motion to remand for lack of subject matter jurisdiction.[12]

Defendants filed the instant motion for summary judgment on April 22, 2010, after the case had been reassigned to the undersigned.[13] Defendant's motion asserts that the property at issue is actually owned by Iberville and, as such, plaintiffs lack standing to assert claims for property damage.[14] Defendant further asserts that, although Iberville is owned by Landry, as an LLC, it is a separate and distinct entity from these individual plaintiffs and, under Louisiana law, is the only party with standing to assert property damage claims in this case.[15]

Ten (10) days after defendant's motion for summary judgment was filed, Iberville filed its motion for leave to file petition of intervention.[16] Iberville's motion asserts that it owns an interest in the property at issue in this case and that Laney is indebted to it for damage to that property caused

---

[10] R. 1 at ¶¶ IV, VII.

[11] R. 19.

[12] Id.

[13] R. 33.

[14] Id.

[15] Id. at p. 5 citing Exhibit C (deposition of Landry at 59:23 - 61:7).

[16] R. 35.

by "illegal dumping of material on the property."[17] Iberville also asserts that "[t]he plaintiff, Chad Landry, consents to this motion."[18] Iberville's motion to intervene was granted by order of the magistrate judge on May 13, 2010, but that order was vacated by the court based on our conclusion that the motion was granted prematurely and without written reasons.[19] Having now allowed for ample briefing by all parties, we consider the two (2) pending motions below.

## II.  APPLICABLE STANDARDS

Summary judgment is appropriate when the

> pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[20]

In reviewing such evidence, the court will draw all justifiable inferences in favor of the non-moving party.[21] An issue of fact is "genuine" when its resolution determines the non-moving party's entitlement to relief.[22]

Once the movant has demonstrated "an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to come forward with specific facts showing

---

[17] Id. at ¶ 1.

[18] Id. at ¶ 2.

[19] R. 44.

[20] Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[21] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

[22] Anderson, 477 U.S. at 248.

a genuine issue of fact for trial.[23] Conclusory allegations and denials, speculation, improbable references, unsubstantiated assertions and legalistic argumentation are not an adequate substitute for specific facts showing that there is a genuine issue of fact necessitating trial.[24] The court will not assume that the non-moving party will meet its burden in the future, as such party is obligated to respond affirmatively to a motion for summary judgment and may not rest upon the pleadings without specific factual allegations in support of these claims.[25]

Although the movant must demonstrate a lack of evidence as to one or more necessary elements of the non-moving party's case, it is not necessary that the movant negate the elements of the non-moving party's case.[26] If the movant fails to meet this initial burden, the motion must be denied, regardless of the non-moving party's response.[27]

Fed. R. Civ. P. 24 provides that, upon timely motion, the court must permit intervention by anyone who

> (1) is given the unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties

---

[23] Celotex, 477 U.S. at 325; Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[24] SEC v. Recile, 10 F.3d 1093, `097 (5th Cir. 1993).

[25] Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990)).

[26] Id., citing Celotex, 477 U.S. at 323 and Lujan, 497 U.S. at 885-86.

[27] Id.

adequately represent that interest.

Such intervention is referred to as "intervention of right." Rule 24 further provides that, upon timely motion, the court may permit intervention by anyone who

> (1) is given a conditional right to intervene by a federal statute; or
>
> (2) has a claim or defense that shares with the main a action a common question of law or fact.

Such intervention is referred to as "permissive intervention." Whether the movant seeks intervention of right or permissive intervention, the court must first satisfy itself that the motion is timely. Rule 24 does not define the term "timely." Thus, "whether [or not] an application for intervention is timely is largely committed to the discretion of the district court..."[28] When determining whether or not a motion to intervene is timely, a district court must consider the four factors set forth by the U.S. Fifth Circuit Court of Appeals in Stallworth v. Monsanto Co.,[29] which are:

> (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene;
>
> (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;
>
> (3) the extent of the prejudice that would-be intervenor may suffer if his petition for leave to intervene is denied; and

---

[28] Stallworth v. Monsanto, 558 F.2d 257, 263 (5th Cir. 1977) (internal citations omitted).

[29] Id.

>   (4)     the existence of unusual circumstances militating either
>           for or against a determination that the application is timely.[30]

Whether or not a motion to intervene is "timely" is not a formulaic analysis, but rather, a consideration of the totality of the circumstances.[31]

## III.   ANALYSIS

Exhibit "E" to Laney's motion for summary judgment is a certified copy of the Act of Sale transferring ownership of the property at issue in this case from Meijer Family Company, LLC to Iberville on December 22, 2008.[32] By Act of Transfer dated June 11, 2009, Landry and Burns received several acres of land from Iberville.[33] The alleged trespass by Laney occurred on March 4, 2009. Neither party, nor the would-be intervenor, suggests that Landry and Burns actually owned the property on the date of the alleged trespass.

It is well settled that, under Louisiana law, the landowner at the time of the occurrence is the person entitled to assert a claim for property damage.[34] Damages to the property sustained prior to sale or transfer are personal rights which are not transferred to the new owner absent an express assignment of the right.[35] Thus, under the uncontested facts of this case, we agree with defendant

---

[30] Id. at 264-66.

[31] Id. at 263-64 (internal citations omitted).

[32] R. 33-7. The court notes that the Act of Sale appears to have been properly recorded in the Iberville Parish conveyance records on December 23, 2008.

[33] R. 33-8.

[34] Eagle Pipe and Supply, Inc. v. Amerada Hess Corp., 2010 WL 487238 (La. App. 4 Cir. 2010); Dorvin Land Co. v. Parish of Jefferson, 469 So.2d 1011, 1013 (La. App. 5 Cir. 1985).

[35] St. Jude Medical Office Building Ltd. Partnership v. City Glass and Mirror, Inc., 619 So.2d 529 (La. 1993); Matthews v. Ashworth, 12 So. 518 (La. 1893); Clark v. Warner, 6 La.

Laney that plaintiffs Landry and Burns lack standing to assert claims for damage to or remediation of the property at issue. These claims may have only been asserted by the property owner, Iberville, a limited liability company organized under laws of the State of Louisiana.[36] Though Landry is the sole member of Iberville, Louisiana law does not permit a shareholder to assert claims in his own name on behalf of an LLC.[37] To allow these claims by plaintiffs would subvert the separate entity regime and would permit Landry to reap the benefits of LLC status, while retaining the benefits of individual status.[38] Thus, plaintiffs' claims for testing and removal of the allegedly hazardous material, as well as claims for testing and treatment of historic trees on the property should be dismissed with prejudice.

Additionally, Louisiana law does not permit members of an LLC to assert personal injury claims arising out of damage to a corporation.[39] Thus, plaintiffs' claims for psychological pain and suffering, mental anguish, anxiety, psychological and psychic damages, enjoyment of life and inconvenience should similarly be dismissed with prejudice. We find that, given applicable Louisiana law, defendant's motion for summary judgment should be granted as to all claims by

---

Ann. 408 (La. 1851).

[36]R. 33-8.

[37]La. C. C. P. Art. 681 ("Except as otherwise noted by law, an action can be brought only by a person having a real and actual interest which he asserts."); Joe Conte Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 689 So.2d 650 (La. App. 4 Cir. 1997); Bolanos v. Madary, 609 So.2d 972 (La. App. 4 Cir. 1992).

[38]La. Rev. Stat. Ann. § 12:1301(10); Bankston v. Tasch, LLC, 2010 WL 2204486 (La. App. 4 Cir. 6/2/2010).

[39]Maestri v. Destrehan Veterinary Hosp., Inc., 653 So.2d 1241 (La. App. 5 Cir. 1995); L&L Industries, Inc. v. Progressive Nat. Bank, 535 So.2d 1156 (La. App. 2 Cir. 1988); Hinchman v. Oubre, 445 So.2d 1313 (La. App. 5 Cir. 1984).

plaintiffs in this suit.

We now turn to arguments concerning whether or not Iberville's motion to intervene is timely. Iberville's motion does not specify whether it seeks intervention of right or by permission. Referring to the language of Fed. R. Civ. P. 24 cited above, it is clear that Iberville may not demand intervention as of right. Iberville cites no statutory grant of right of intervention and, further, does not argue that its rights are not adequately represented in this case. Indeed, no such argument could be made by virtue of the fact that Iberville's sole member, Landry, is already a party to this suit. Accordingly, we must determine whether or not Iberville's motion is timely for purposes of permissive intervention under Rule 24(b), which allows the court to grant leave to intervene when the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact."

The first Stallworth factor requires the court to consider the length of time that the would-be intervenor knew or should have known of its interest in the case. "Actual or constructive knowledge of the pendency of action is not by itself sufficient."[40] Instead, the court should consider the "'movant's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case.'"[41] Plaintiff Landry testified that he sought the services of an attorney on the night of March 4, 2009, the same day as the alleged trespass, and that his attorney was present at the time DEQ visited the site.[42] Landry, as the sole member of Iberville, undoubtedly became aware of

---

[40] Lelsz v. Kavanagh, 710 F.2d 1040 (5th Cir. 1983) (citing Stallworth, 558 F.2d at 264).

[41] Id. (quoting United States v. Marion County School Dist., 590 F.2d 146, 149 (5th Cir. 1979)).

[42] R. 33-5 (deposition of Landry) at 109:3-20; 115:11-15.

9

the potential claims in this case on or about March 4, 2009. We find the failure of Iberville to intervene until faced with Laney's motion for summary judgment pointing out the suit's fatal defect to be unreasonable under these facts.

The second <u>Stallworth</u> factor asks the court to consider the prejudice that the existing parties to the suit may experience as a result of the would-be intervenor's failure to intervene when it knew or reasonably should have known of its interest in the case. Plaintiff Burns would suffer no prejudice whatsoever because, as alleged in Paragraph 4 of the motion to intervene, Landry is the sole member of Iberville. As to Landry, as the sole member of Iberville, would possibly be prejudiced by the denial of intervention, except for the fact that any claim by Iberville will have prescribed as explained hereinafter. We find no prejudice whatsoever to Laney for failure to allow the intervention.

The third <u>Stallworth</u> factor concerns prejudice resulting from the proposed grant of intervention. Parties often cite the increased expense and delay which invariably results from the addition of another party in ongoing litigation. Although this effect may be considered by the court, it, alone, does not provide a sufficient basis for the denial of intervention. Instead, we consider whether permission to intervene will result in undue delay or prejudice the rights of the individual parties, as instructed under Rule 24. Intervention would obviously cause no prejudice to either plaintiff. Our next consideration is what prejudice intervention may cause to Laney.

The claims Iberville wishes to assert against Laney are the intentional tort of trespass and resulting property damage which are subject, under Louisiana law, to a liberative prescription of one (1) year, which commences to run on the day the owner of the immovable property acquire, or should

have acquired knowledge of the damage.[43] Under the facts of this case, the prescriptive period on Iberville's proposed claim began to run on March 4, 2009 and its claim prescribed on March 4, 2010. Iberville's motion to intervene was filed on May 11, 2010, more than two (2) months after the property damage claims prescribed. Iberville asserts that its proposed claims actually contemplate a continuing tort by Laney because of the continued presence of the allegedly hazardous substance on its property.

We reject this argument on the basis of the recent case of Hogg v. Chevron USA, Inc.,[44] decided on July 6, 2010 by the Louisiana Supreme Court, and cases cited therein. In that case, the court explained that Louisiana law distinguishes between an ongoing injury and ongoing effects of a single injury. The court cited, among many others, the case of Mouton v. State of Louisiana,[45] in which the Louisiana First Circuit Court of Appeal held that the deposit of toxic waste on plaintiff's property was the injury and that the continued presence of the toxic waste on the property did not constitute a continuing tort, but, instead, on ongoing result. The Louisiana Supreme Court affirmed the appellate court's finding that Mouton's tort claim prescribed one year before the suit was filed, rejecting plaintiff's argument in favor of continuing tort theory. In Hogg, the state's high court reached a similar conclusion, finding that plantiff's claims for damage to property resulting from the leak of several subsurface fuel tanks did not constitute claims for continuing tort, because the leaks abated in 1997 when the tanks were replaced and the continued presence of gasoline on plaintiff's property was not a recurring injury, but a continuing effect of a single injury.

---

[43] La. Civ. C. Arts. 3492, 3493.

[44] 2010 WL 2724029 (La. 7/6/10).

[45] 525 So.2d 1136 (La. App. 1 Cir. 1988).

11

Given the clear instruction of the Louisiana courts on this issue, we reject Iberville's argument that the continued presence of the allegedly hazardous material on its property constitutes a continuing tort. Moreover, we find it an important detail that plaintiffs admit that Laney offered, though they believed they had placed the material on Iberville's property with the express permission of Landry, to remove the substance immediately and plaintiffs refused to allow the substance to be removed from the property.[46] Thus, its continued presence may be considered a result of plaintiffs' own will.

Given the findings above, we find that under the third factor of <u>Stallworth</u>, the prejudice to Laney if we were to allow intervention by Iberville is substantial. Louisiana law establishes prescriptive periods which, when lapsed, extinguish the right of action. Were we to allow intervention in this case, we would provide a method whereby a party who failed to assert a right it knew of may revive an extinguished cause of action against another. We find such a result unjust in light of the circumstances of this case.

The fourth <u>Stallworth</u> factor requires the court to consider any special circumstances which may weigh in favor of or against the finding of timeliness. As discussed above, the undisputed record in this case demonstrates that Iberville, via its sole member, Landry, was fully apprised of its potential rights against Laney on March 4, 2009 when Landry discovered the allegedly hazardous

---

[46] More specifically, defendant Laney alleges that its employee Tim Monk visited Landry while he was working on the property and discussed with him the possibility of placing some of the substance at issue on the property for a price of $20 per load. Laney alleges that Monk received Landry's permission during that conversation and that the subsequent dumping of the substance on the property was done pursuant to that oral agreement. Landry admits that he discussed the possibility with Monk, but denies any agreement. <u>See</u> R. 33-1 at p. 3.


substance and sought the advice of an attorney.[47] Were to court to believe that Landry simply forgot that he was not the true owner of the property at issue, we would still be forced to find that he knew he was not the owner on or about June 11, 2009 when he and plaintiff Burns received a portion of the property (not involved in this litigation) by Act of Transfer from Iberville. Plaintiffs' suit was filed on June 30, 2009 and, inexplicably, Iberville was not a party to the suit, though it had just transferred part of the property to plaintiffs weeks before. Moreover, plaintiffs were represented by counsel from the date of the alleged injury and, thus, should not be heard to claim any ignorance of applicable law. Under these facts, we find that Iberville was particularly careless in asserting its rights and should not be permitted to revive an extinguished action as a reward for its inaction.

Having considered the four factors required of us under the Fifth Circuit's reasoning in Stallworth, we conclude a consideration of said factors weighs heavily in favor of defendant and that Iberville's motion to intervene is untimely and should be denied. As mentioned above, we note that, even if we were to grant Iberville's motion to intervene in this case, its claims would be prescribed, as the institution of claims by a party with no standing, here plaintiffs, does not interrupt prescription under Louisiana law.[48]

## IV.   CONCLUSION

Having considered the law and arguments of the parties, the court finds that plaintiffs lack standing to maintain their claims against defendant for property damage and personal injury resulting therefrom on the basis that the property at issue was owned by Iberville, a Louisiana limited liability

---

[48]La. Civ. C. Art. 3462 ("Prescription is interrupted when the owner commences action against the possessor, or when the obligee commences action against the obligor...")

company, at the time of the alleged trespass and dumping of hazardous materials. For that reason, we conclude that defendant's motion for summary judgment should be granted as to all claims against it by plaintiffs. We also conclude that, under the factors set forth in <u>Stallworth</u>, Iberville's motion for permissive intervention is untimely and should be denied. The court will issue judgment in conformity with these findings.

**Alexandria, Louisiana**
**July 19, 2010**

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE